IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SCOTT R. HEMINGWAY,

                              Plaintiff,

         vs.                                        Civil Action No.
                                                    04-CV-1342 (LEK/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

WALTER D. KOGUT, P.C.                     WALTER D. KOGUT, ESQ.
500 South Salina Street, Suite 412
Syracuse, NY 13202

FOR DEFENDANT:

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE, ESQ.
United States Attorney for the            Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL                 BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                        ARTHUR SWERDLOFF, ESQ.
                                          Assistant Regional Counsel


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Scott R. Hemingway, a claimant with a documented history of suffering from a seizure disorder and lower back pain, has commenced this proceeding seeking judicial review of an administrative determination denying his application for disability insurance and supplemental security income ("SSI") benefits under the Social Security Act.  In support of his challenge of that denial, plaintiff contends that the administrative law judge ("ALJ") who heard and determined the matter at the agency level erred in concluding that his impairment did not meet or equal a presumptively disabling listed impairment, relating to epilepsy.  Plaintiff also maintains that the ALJ committed reversible error by failing to consider the combined, limiting effects associated with his impairments, discrediting the contrary opinions of one of his treating physicians, and improperly determining disability through resort to the medical-vocational guidelines (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, rather than calling upon a vocational expert to address the unique combination of exertional and global nonexertional limitations presented by his conditions.

The record which was before the agency includes within it an opinion from plaintiff's treating physician, stating that Hemingway's

epilepsy meets or is medically equivalent to the criteria set forth in the applicable listing of presumptively disabling conditions.  In his decision, the ALJ discounts this highly significant opinion from a treating source with little discussion, without any meaningful, detailed comparison of plaintiff's symptoms, signs and medical findings with a medical criteria set forth in that listing, and indeed citing in his discussion a listing neither relied upon by plaintiff's treating physician nor applicable to plaintiff's condition.  Accordingly, I recommend that the Commissioner's determination be vacated and the matter remanded to the agency for further proceedings, including a proper analysis of plaintiff's condition as compared to the potentially governing listing.

I.      BACKGROUND

Plaintiff was born on September 26, 1964; at the time of the administrative hearing in this matter, he was thirty-nine years of age.  Administrative Transcript at 253.[1]  Plaintiff is married and has five children, ranging in age, at the time of the hearing, from seven to fourteen.  AT 253.  Plaintiff, who required special education throughout the course of his schooling, has a tenth grade education.  AT 233.

---

[1]      Portions of the Administrative Transcript (Dkt. No. 5), which was filed by the Commissioner with the agency's answer, will be cited as "AT ___."

Plaintiff, who has never received any formal vocational training, last worked in 2002, when he delivered newspapers on a temporary basis for a period of three or four months.  AT 257-58.  In the past, plaintiff has also worked as a taxi driver, temporary laborer, dishwasher, ambulance driver, and cashier.  AT 69.  At the administrative hearing, the ALJ noted that plaintiff's prior work experience was limited to "temporary laboring type jobs[.]"  AT 278.

Plaintiff, who has a history of intractable childhood onset epilepsy and cerebral dysgenesis, was first diagnosed as suffering from a seizure disorder at the age of seventeen.  AT 122, 139.  Plaintiff's symptoms were well-controlled by the use of Tegretol until 1989, when he discontinued taking his medication.  AT 139, 155.  Although the record is somewhat unclear on this score, it appears that after 1989 plaintiff enjoyed a hiatus of several years without experiencing any seizures.  *Id.*  In March of 2002, however, plaintiff's symptoms recurred, and he began to experience "spells," which led to blurred vision, tingling, and confusion.  AT 139.  These episodes, which occurred without precipitating events, also caused plaintiff to black out when he experienced them while standing.  *Id.*

As a result of the recurrence of his symptomology, plaintiff began

treatment under the care of Dr. Robert Beach, a neurologist, on April 23, 2002.  AT 139.  At that time, plaintiff reported that his "spells" were approximately ninety seconds in duration, and occurred every other day up to three times per day.  AT 139.  Noting that "there is an extensive family history of developmental anomalies/mental retardation[,]" and reporting that plaintiff appeared to be suffering from complex partial seizures, Dr. Beach arranged for plaintiff to undergo an electroencephalogram ("EEG") with extended hyperventilation.  AT 139-40.  During the EEG, which was conducted on April 26, 2002, plaintiff was symptomatic while he was being hyperventilated; his hyperventilation response was within normal limits, however, leading Dr. Beach to opine that Hemingway's symptoms were probably not related to seizures.  AT 142.

At Dr. Beach's request, magnetic resonance imaging testing ("MRI") was performed on plaintiff's brain on May 9, 2002.  AT 143.  The MRI revealed the presence of partial agenesis of the corpus callosum with areas of heterotopic gray matter malformations.  *Id*.  After reviewing the results of both the EEG and MRI, Dr. Beach diagnosed plaintiff as suffering from simple partial seizures, complex partial seizures, probably

related to partial agenesis of the corpus callosum, and multiple heterotrophic gray matter malformations, indicative of a developmental syndrome.  AT 144.  Dr. Beach prescribed Tegretol, which plaintiff was instructed to take in 300 milligram dosages twice each day.  AT 144, 149.

Dr. Beach's treatment notes from September 10, 2002 reflect that through the use of Tegretol, plaintiff's symptoms were well-controlled for several months.  AT 149.  On January 18, 2003, however, after not taking the medication for two weeks as a result of financial considerations, plaintiff suffered a breakthrough seizure requiring hospitalization.  AT 155, 168.  Three days later, on January 21, 2003, plaintiff was evaluated by Dr. Beach, who diagnosed plaintiff as suffering from complex partial epilepsy with breakthrough seizures secondary to noncompliance.  AT 152.  Dr. Beach also found that plaintiff experienced mild cognitive impairment and psychomotor slowing.  AT 151.  During that session, Dr. Beach counseled plaintiff regarding the importance of remaining compliant with his medication, and predicted that if he continued on Tegretol, as directed, he would likely become and remain seizure free.  AT 152.

Despite Dr. Beach's prognosis, plaintiff unfortunately experienced an additional series of episodes, several of which were unrelated to

medication compliance issues.  *See* AT 154, 160, 162.  In April of 2003, for example, plaintiff's wife reported an event in which she found him unconscious on the floor.  AT 154.  Dr. Beach opined that this incident was not caused by a failure to remain faithful to his medication regime, but instead was presumably the result of a seizure.  AT 234.

In an outpatient visit note dated December 12, 2003, Dr. Beach stated his opinion that plaintiff had suffered from ten seizures since his last follow-up appointment on August 12, 2003.  AT 162.  The visit note also reflects that plaintiff had been compliant with his medication during that period.  *Id.*  In a subsequent office visit note, dated January 27, 2004, Dr. Beach reported that plaintiff had suffered from three additional seizures, and that his seizures were poorly controlled, possibly secondary to plaintiff confusing his dosage of medication.  AT 165.  Dr. Beach also found that the plaintiff had difficulty with spelling and performing serial sevens.  *Id.*

In a letter dated August 23, 2004, written at the apparent request of Hemingway's counsel, Dr. Beach summarized his assessment of the plaintiff's impairments.  AT 232-34.  In that letter, Dr. Beach asserted that the plaintiff's epilepsy condition meets or equals in severity the condition

set forth in listing 11.03 of the governing regulations, and that the plaintiff's seizure disorder, "combined with his back problems and his limited mental ability, disable him from substantial gainful employment." AT 233.  In support of those opinions, Dr. Beach reported that plaintiff's disconnection syndrome would impede his ability to perform work activities requiring sustained attention or verbal and visual spatial integration.  AT 233-34.  He also opined that plaintiff's difficulty spelling and performing serial sevens and his third grade reading level precludes him from performing work requiring a significant educational background.  AT 234.

Addressing the plaintiff's epilepsy condition, Dr. Beach noted that his seizures occur without warning, and that he has no memory of them when they do occur.  AT 232-33.  He opined that the plaintiff's epilepsy condition impairs his ability to function safely and reliably in the workplace, and expressed concern that plaintiff would expose himself and others around him to danger if he were to experience a seizure while working. AT 234.  Specifically, Dr. Beach warned that should plaintiff suffer a seizure "on any job involving the use of tools, motors or equipment capable of causing injury, the result could [be] disastrous."[2]  AT 234.

---

[2]        Consistent with this admonition, Dr. Beach has also reported in previous outpatient visit notes that the plaintiff should be restricted from work-related driving.

Attached to Dr. Beach's August, 2004 letter was a completed "Medical Source Statement of Ability to do Work-Related Activities (Mental)", in which he reported that the plaintiff was extremely restricted in his ability to understand and remember detailed instructions; extremely restricted in his ability to carry out detailed instructions; markedly restricted in his ability to make adjustments on simple work-related decisions; moderately restricted in his ability to understand and remember short, simple instructions; and moderately restricted in his ability to carry out short simple instructions.  AT 235.  In addition, Dr. Beach reported that the plaintiff was markedly restricted in his ability to respond appropriately to work pressures in a usual work setting and his ability to respond appropriately to changes in a routine work setting.  AT 236.  Dr. Beach attributed each of these restrictions to a combination of plaintiff's epilepsy condition, disconnection syndrome, mental retardation, and brain malformations.  *Id.*

In addition to his epilepsy condition and limited mental ability, the plaintiff also suffers from an impairment of his lower back, which the ALJ found to be of sufficient severity to restrict his ability to perform basic work

_____

AT 155, 160.

activities.  AT 14, 110-18.  The plaintiff's back impairment dates back to at least 1992, although there is indication that it may have been exacerbated by an April, 1997 work accident when plaintiff was struck in the back by pallets, as well as a second work related injury, suffered in May of 2000. AT 107, 185-225.  Over time, plaintiff's back condition has been treated by Dr. John J. Cambareri, whose notes reflect his opinion that plaintiff suffers from post laminectomy syndrome and severe back pain.  AT 185-205. The medical evidence currently in the record regarding plaintiff's back condition is somewhat equivocal, and reflects that recently, plaintiff has sought little if any treatment for his back condition.  On several occasions during 2000, it was reported that he was not in acute pain, and had little or no loss of motion, and in a note dated November 10, 2000 Dr. Cambareri cleared the plaintiff to return to work.[3]  Several medical notes in the record, however, reflect that plaintiff was having ongoing back pain, and discussed various pain relief options, such as going to the pain clinic. *See*, *e.g.*, AT 110-18.

II.     PROCEDURAL HISTORY

        A.      Proceedings Before The Agency

_____

        [3]     On August 3, 1998, after a period of treatment following the 1997 accident, plaintiff was also cleared by Dr. Cambareri for return to work.  AT 210.

-10-

Although not the subject of this action, the plaintiff first filed an application for benefits with the Social Security Administration (the "agency") on May 26, 1999, alleging a disability due to back and leg pain and epilepsy, with an attributed onset date of January 15, 1999.  AT 25. That claim was denied, both initially and on reconsideration.  *Id.*  At plaintiff's request, a hearing was held on April 19, 2000 before ALJ Joseph Medicis, Jr. to address that earlier application for benefits.  *Id.* Following that hearing, at which plaintiff was represented by counsel, ALJ Medicis rendered a decision dated July 27, 2000.  AT 25-32.  In his decision ALJ Medicis, while noting that plaintiff suffered from a severe impairment, found that he possessed the capability to perform his past relevant work.  AT 31.  Accordingly, ALJ Medicis concluded that the plaintiff was not entitled to Social Security benefits.  AT 32.  It does not appear that plaintiff petitioned for judicial review of that adverse determination.

On June 10, 2002, plaintiff filed new applications for disability insurance and SSI benefits, alleging a disability onset date of October 29, 2001.  AT 51-53, 240-42.  In those later applications, plaintiff again offered his back impairment and seizure disorder as disabling conditions.  AT 60.

-11-

Following the rejection of his renewed efforts to secure benefits, at plaintiff's request a hearing was conducted on March 23, 2004 by ALJ Gordon Mahley, Jr. to address the matter.  AT 249.  Following the close of proceedings, ALJ Mahley issued a decision dated July 23, 2004, finding that the plaintiff was not disabled, and therefore not entitled to receive Social Security benefits.  AT 10-20.

To reach his decision, ALJ Mahley employed the familiar, five-step sequential calculus for analyzing claims of disability.  AT 11.  At step one, ALJ Mahley found that the plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, October 29, 2001.  AT 12. Proceeding to steps two and three, ALJ Mahley concluded that although the plaintiff's back impairment and seizure disorder each constitute a severe impairment substantially limiting his ability to perform basic work activities, his conditions did not meet or equal in severity of any of the presumptively disabling impairments listed in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App.1, rejecting Dr. Beach's contrary opinion addressing that issue.[4]  AT 14.

---

[4]      As will be seen, ALJ Mahley's decision focused principally upon Listing 11.02, which at that time addressed epilepsy characterized as major motor seizures, rather than Listing 11.03, discussed by Dr. Beach in his letter, and applicable to epilepsy entailing "[m]inor motor seizures (petit mal, psychomotor, or focal)[.]"  20

Turning to step four, ALJ Mahley examined the available medical evidence to evaluate plaintiff's ability to perform work-related functions in light of the limitations associated with his medical impairments.  AT 14-17.  Rejecting Dr. Beach's opinion that plaintiff is unable to work in any of the positions previously held by him, ALJ Mahley found that Hemingway retains the residual functional capacity ("RFC") to perform light work, and is thus capable of performing his past relevant work as a cashier or delivering newspapers.[5]  AT 17-19.

While finding that plaintiff remains able to perform in certain of his past relevant work – a finding which, if properly supported, would warrant a finding of no disability – the ALJ nonetheless proceeded to step five of the governing test, apparently as a precautionary measure.  At that stage,

_____

C.F.R. Pt. 404, Subpt. P, App.1 Listing § 11.03 (2004) *See* pp. 20-25, *post*.

[5]      Light work is defined by regulation as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

-13-

after considering the plaintiff's capacity to perform a full range of light work activity, his age, his limited education, and his prior work experience, and applying the corresponding section of the grid, ALJ Mahley concluded that the plaintiff was capable of performing work that exists in significant numbers in the national economy.  AT 18.  Accordingly, ALJ Mahley found that the plaintiff was not disabled.  *Id.*  The ALJ's decision became final on September 15, 2004, upon denial by the Social Security Administration Appeals Council of his request for review of that determination.  AT 5-7.

    B.   <u>This Action</u>

Plaintiff commenced this action on November 19, 2004.  Dkt. No. 1. Issue was thereafter joined by defendant's filing of an answer, accompanied by an administrative transcript of the proceedings before the agency, on February 28, 2005.  Dkt. Nos. 4, 5.  With the filing of the brief on behalf of the plaintiff on September 6, 2005, Dkt. No. 9, and that on behalf of the Commissioner on October 19, 2005, Dkt. No. 10, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. §636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See*

*also* Fed. R. Civ. P. 72(b).[6]

III.    DISCUSSION

    A.    Scope of Review

      A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence. *Martone*, 70 F.

Supp.2d at 148.  If, however, the correct legal standards have been

---

     [6]    This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28,
1998, and later amended and reissued by then-Chief District Judge Frederick J.
Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this
is considered procedurally, once issue has been joined, as if cross-motions for
judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure.

-15-

applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.*

*NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.     Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

-18-

the second step involves an examination of whether the claimant has a
severe impairment or combination of impairments which significantly
restricts his or her physical or mental ability to perform basic work
activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer
from such an impairment, the agency must next determine whether it
meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*
§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,
then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at
149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20
C.F.R. §§ 404.1520(d), 416.920(d).

     If the claimant is not presumptively disabled, step four requires an
assessment of whether the claimant's residual functional capacity ("RFC")
precludes the performance of his or her past relevant work.  20 C.F.R. §§
404.1520(e), 416.920(e).  If it is determined that it does, then as a final
matter the agency must examine whether the claimant can do any other
work.  *Id.* §§ 404.1520(f), 416.920(f).

     The burden of showing that the claimant cannot perform past work
lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);
*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.    The Evidence in this Case

Pivotal to the Commissioner's finding of no disability is ALJ Mahley's step three determination that plaintiff's impairments do not meet or equal the severity of any of the presumptively disabling impairments listed in the governing regulations.  Plaintiff challenges that determination, arguing that it is not supported by substantial evidence in the record, and additionally that in making that determination, the ALJ improperly discredited the contrary opinion of plaintiff's treating physician, Dr. Beach.

By regulation, the Commissioner has set forth a series of listed impairments which describe a variety of physical and mental conditions, indexed according to the body system affected.[7]  20 C.F.R. Pt. 404,

---

[7]      The listings are broken down into fifteen categories, including growth impairment, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary impairments, hematological disorders, skin disorders, endocrine system, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, and immune system.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Subpt. P, App. 1; *see Sullivan v. Zebley*, 493 U.S. 521, 529-30, 110 S. Ct. 885, 891 (1990).  Those listed impairments are presumptively disabling – "[t]hat is, if an adult is not actually working and his [or her] impairment matches or is equivalent to a listed impairment, he [or she] is presumed unable to work and is awarded benefits without a determination whether he [or she] actually can perform his [or her] own prior work or other work." *Zebley*, 493 U.S. at 532, 110 S. Ct. at 892 (citing *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987)).

At step three of the now familiar, five part analysis, an ALJ must determine whether the condition from which a claimant suffers meets or equals a listed impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Martone*, 70 F.Supp.2d at 149 (citing *Ferraris*, 728 F.2d at 584).  Armed with the support of an opinion to this effect from his treating neurologist, the plaintiff contends that his impairment meets the criteria of Listing 11.03, which at the relevant time provided as follows:

> 11.03 Epilepsy–Minor motor seizures (petit mal, psychomotor, or focal) documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 404, Subpt. P, App. 1, § 11.03.[8]

In his decision, ALJ Mahley found that plaintiff's impairments did not meet or equal the severity of any applicable listing.  AT 14.  Despite squarely contradicting the opinion of plaintiff's treating physician, Dr. Beach, at the offset that plaintiff's seizure disorder meets or equals in severity the condition set forth in Listing 11.03, however, the ALJ's decision contains no significant discussion of the criteria of Listing 11.03, or whether the plaintiff has presented sufficient evidence to meet them.  Indeed, the ALJ's apparent focus was chiefly upon the listing 11.02, which pertains to major motor seizures, rather than Listing 11.03 which, according to Dr. Beach – and as substantiated by the record – is clearly the more appropriate listing to be applied.  And, although the ALJ purports to have considered and ruled out the applicability of both Listing 11.02 and "any other Listing[,]" he fails to state whether he considered the opinion of the plaintiff's treating physician on this issue, and if so why it was rejected.  AT 14.  The opinion of such a treating physician is ordinarily entitled

---

[8]     Since the date of the ALJ's decision, the listings, including those applicable to neurological impairments of the nature now at issue, have been revised. It does not appear, however, that the result would be altered depending upon which version of Listing 11.03 is applied.

considerable deference, provided that it is supported by medically

acceptable and clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[9]  *Veino,* 312 F.3d at 588;

*Barnett*, 13 F. Supp.2d at 316.

It is true, as the Commissioner has argued, that a naked opinion

from a treating physician, to the effect that the claimant's condition meets

or equals a listed, presumptively disabling condition, is not in and of itself

entitled to deference since it touches upon a matter reserved to the

Commissioner.  Social Security Ruling 96-5p; *see Ianni v. Barnhart*, 403

F.Supp.2d 239, 255-56 (W.D.N.Y. 2005); *see also* 20 C.F.R. §

404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  In this

---

[9]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

case, however, Dr. Beach's opinion goes beyond merely opining, without support, that Hemingway's condition meets Listing 11.03, instead addressing the specific criteria set forth in that listing.  *See,* AT 232-34. As the Commissioner's rulings themselves recognize,

> [w]hen a treating source provides medical evidence that demonstrates that an individual has an impairment that meets the listing, and the treating source offers an opinion that is consistent with this evidence, the adjudicator's administrative finding about whether the individual's impairments meets the requirements of a listing will generally agree with the treating source's opinion.

SSR 96-5p.

In this instance, the ALJ's decision is conspicuously silent as to his reasoning for rejecting the opinion of Dr. Beach regarding the applicability of Listing 11.03.  It is also readily apparent that in rejecting that listing the ALJ failed to comply with the requirement that he provide a detailed explanation of his findings, comparing the symptoms, signs and laboratory findings regarding the impairments, as demonstrated from the medical evidence, with the criteria set forth in the listed impairment, as required by regulation.  *See Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 52 (W.D.N.Y. 2002) (reversing the ALJ's decision because his determination at step three did not "reflect a comparison of the symptoms, signs, and laboratory

-24-

findings about the impairment . . . with the medical criteria as shown with the listed impairment").

In light of the ALJ's failure to properly consider the applicability of Listing 11.03 to plaintiff's condition, particularly in light of the opinions of his treating physician suggesting its applicability, I find that the Commissioner's determination neither results from the proper application of governing legal principles, nor it is supported by substantial evidence.[10]

## IV.   SUMMARY AND RECOMMENDATION

Despite the opinion of the plaintiff's treating physician that his epilepsy condition meets or is medically equivalent to the criteria set forth in Listing 11.03, the ALJ's decision under review contains neither any significant discussion of the criteria of that listing and, correspondingly, whether the plaintiff has presented sufficient evidence to meet them, nor a proper explanation for his rejection of the opinions from Dr. Beach, plaintiff's treating neurologist.  Under these circumstances, I recommend

---

[10]      I note that the plaintiff has asserted several other arguments in support of his challenge to the ALJ's decision.  In light of my finding that the ALJ erred by failing to adequately address Listing 11.03, I have not addressed these alternative arguments, suggesting instead that they instead be left for consideration on remand to the agency.  I note, however, that I have serious doubts as to the propriety of utilizing the grid, as a framework, to sustain the Commissioner's burden at step five in light of the nonexertional limitations associated with plaintiff's seizure disorder.  *See Jehn v. Barnhart*, 408 F.Supp.2d 127, 134-35 (E.D.N.Y. 2006).

reversal of the Commissioner's determination and remand to the agency for a further analysis of plaintiff's condition at step three of the governing test for disability, to include a specific comparison of the symptoms, signs, and medical findings associated with the plaintiff's condition with the medical criteria as set forth in Listing 11.03, as well as for further consideration of the agency's findings at step four and five of the governing test.  Accordingly, it is hereby

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability be VACATED, and the matter be REMANDED to the agency for further proceedings, consistent with this report.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties may file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties electronically.

Dated:     February 20, 2007
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\Hemingway.wpd